We'll move to our third case this morning, Birt Ford v. Dennis Reagle. Ms. Cleary. Thank you, Your Honor, and may it please the court. My name is Elaine Cleary, and I'll be giving the opening, respectfully reserving two minutes for rebuttal by co-counsel Samantha Riley. We are alongside co-counsel Patrick Hecker, and together we represent the petitioner, Mr. Birt Ford. Your Honor, this case is about whether an attorney who does even less for his client than precedent requires provides constitutionally ineffective assistance of counsel. The law makes clear that a defendant's Sixth Amendment right to counsel extends to the plea bargaining process. The Supreme Court expressly held in Lafler v. Cooper that defendants are entitled to effective assistance of competent counsel during plea negotiations. Negotiating a plea, but failing to provide proper advice, and negotiating a plea, but failing to communicate it to the defendant, are ineffective. It must, therefore, also be the case that declining to negotiate a plea altogether is also ineffective. Well, this case does represent an extension of the principles announced in McCurry v. Fry and Lafler v. Cooper, and we don't usually extend the law on habeas. The principle relied upon must be clearly established, and it would represent, in this case, an extension of Lafler and Fry to extend that plea bargaining and effectiveness analysis to what happened here. Your Honor, I... There was no plea offer on the table, is the bottom line. So there was no failure to communicate it, and there was no failure to give effective advice regarding whether to accept it because no plea bargaining had happened yet, and there was no offer. Correct. No plea bargaining happened because after the prosecutor offered to negotiate and Mr. Ford instructed his attorney to negotiate, Mr. Hicks, the attorney, ignored his client's instruction and did not negotiate. Mr. Ford was forced to proceed to trial where he received a 70-year sentence. Understood. So it's an extension of those cases, not an application of those cases. And so it doesn't satisfy the clearly established requirement for habeas relief. I think there are two parts to your question, Your Honor. So first, we are seeking de novo review because per the law of this circuit in Corcoran v. Neal, when the state court decision, here the Indiana Court of Appeals opinion, which the state does not dispute, was the last reasoned opinion in this case, fails 2254 D1 and D2, which here it did, de novo review applies. But to your other point, this is not an extension of Lafleur and Frye, but merely the only reasonable application of those precedents to this case. And the 6th, 11th, and 8th circuits have held so in Byrd, in Hoffman, and in Carmichael. It doesn't make sense, Your Honor, that an attorney is ineffective when he or she negotiates a plea but fails to communicate it, but not ineffective for failing to negotiate a plea altogether. An attorney like Mr. Hicks, who does even less for his client than the ineffective attorneys in Frye, in Lafleur, and Padilla, should not be more deserving of constitutional protections than an attorney who does more. That may be correct, Ms. Cleary, with regard to syllogistic logic, but we have to look at the law. And there's not a case that says that. That's the problem. I think that Hill v. Lockhart says that. So Hill v. Lockhart is a case that goes way back to 1986 in the Supreme Court. And that was the case that said that Strickland versus Washington applies to plea bargaining. Defendants have Sixth Amendment rights in the plea bargaining process. And what Lafleur and Frye did, and Padilla in 2010, two years earlier, was to take that principle, that general principle from Hill, applying the principle from Strickland, and to apply that principle in a fact-specific context. So I think Lafleur and Frye are specific applications of the Strickland principle, the Hill principle, to the facts before them. And I think it's important to know that the Supreme Court in Lafleur and Frye said expressly on page 162 of Lafleur, defendants have Sixth Amendment rights in plea negotiations. Defendants have Sixth Amendment rights in the plea bargaining process. The Supreme Court says nowhere in Lafleur or in Frye that its holdings are limited to formal pleas. Yes, the facts of those cases involved formal pleas, but I think we see, especially together with Padilla, that those cases were applications of the general principle that defendants have Sixth Amendment rights in the plea bargaining process. Again, quoting page 162 of Lafleur versus Cooper. We may keep you up a little longer than usual because this is a complicated case. Timeline, trial in 2005. We begin to get this habeas activity in 2018 to 2020. Is there anything in the record, or do you know, under Indiana law, whether it was Mr. Ford's obligation to transform this post-conviction circumstance into this affidavit format, or was that the court's obligation to do that? I'm not sure I totally understand the question, Your Honor. My understanding is that Mr. Ford filed his first appeal in 2007 after his 2005 trial. The state took no further action on that appeal until 2018. And what I'm getting at is that 11-year gap. Whose obligation was that to get that decision made? Was it the court's obligation? Was it Mr. Ford's obligation? Was it a former attorney's obligation? I'm trying to discern why the gap. I believe it was the state's obligation. Mr. Ford did everything in his power to move the appeal forward. It was not Mr. Ford's negligence that caused the delay. I'm not sure why exactly the state delayed the process of the case for 11 years, but Mr. Ford had filed his appeal in 2007. It was received by the court. I don't know why there was a delay on the part of the state of Indiana. Ms. Cleary? Yes. Sorry. Can I ask you a couple of related questions here? Triggered by a comment in your brief at page 56, you say, Mr. Ford has demonstrated a reasonable probability he would have accepted the plea. My question, one question is, what plea, since we don't have anything ever put on the table here? And the broader question is, if we were to agree with you and remand this for at least a hearing, what would that hearing look like? Going back almost 20 years, trying to figure out what would the state have offered? This sounds like just an impossible task at this early, where you're saying the failure occurred before any negotiations even took place. Yes. So, Mr. Ford, per page 129 of the appendix, requested that Mr. Hicks go and see what kind of deal the prosecutor would offer after the prosecutor had already offered to negotiate. I understand that. Yes. So, 97% of state defendants in Indiana received pleas. I understand that, too. What's the plea? I mean, but we never got anywhere in this case. There's no, how would you even go about identifying what should have been on the table if he had asked? Sure. I think there are two parts to your question. So, first, I think an evidentiary hearing would allow Mr. Ford to finally gain clarity on these issues that he has been pursuing for 16 years. So, was there any strategic justification for his attorney's decision to ignore his request to plea bargain, to proceed to trial? Let's assume we agree this was a deficient performance in failing to follow up. But, in essence, how would you go about proving prejudice? What is the plea he says now he would have accepted 20 years ago? It is extremely likely, per statistical evidence that we cite in our brief, that Mr. Hicks would have received a plea. It's also likely that he would have received a plea that was less than the 70-year sentence he received at trial. And we know that that kind of sentencing disparity, so he received a sentence at trial that was 10 times longer than the average sentence. There were a lot of aggravating circumstances here, however, correct? Yes, but a 70-year sentence for rape is still extreme, an anomaly, at least for the cases that we looked at in Indiana. But we're talking, though, about trying to reconstruct what a voluntary agreement between two parties might have been subject to approval of a trial judge, right? How do we go about identifying terms? Were there policies in place in the prosecutor's office in Allen County at that time about pleas? Do we have any idea? I think an evidentiary hearing would help bear out these issues. So Mr. Ford has sought diligently for 16 years to answer these very questions. Why didn't Mr. Hicks take him up on his instructions of plea? I think if there were an evidentiary hearing, Mr. Ford could subpoena the prosecutor, he could subpoena his attorney, and we could finally get answers to questions that you're asking about what the plea would have been and whether it would have been less than the 70 years he received. I think there's data, though, from our analysis of similarly-positioned defendants in Indiana and national sentencing statistics for state convictions that any plea for these crimes would have been less than 70 years or two. And what reason do we have to expect that Mr. Ford would have accepted such a plea at the time without using 20-20 hindsight after knowing what his ultimate sentence was? So Mr. Ford... All that we have that I've seen so far is simply he asked the lawyer to find out what the state was going to offer. Judge Hamilton, that is the standard under Strickland. So Strickland, and as articulated again in Lafler, say that a defendant can establish prejudice when he can show a reasonable probability that but for his attorney's unprofessional conduct, the outcome would have been different. And we know from case law... You're not following my question. Ford has to prove he would have accepted the plea. Not that the plea likely would have been better than 70 years in prison. That's the blinder of hindsight that we have here. We have to go back to that ex-ante position, and he has to prove that he would have accepted some unspecified plea that we're trying to reconstruct 20 years later. This is a proof problem that just sounds nearly impossible to me, and I'm looking for some guidance as to what we might ask a district court to do if we were to send it back. Sure, well, I think we have standards from case law that help bear out this reasonable probability standard. So he just has to show a reasonable probability that the outcome would have been different, that he would have gotten and accepted a plea. And how does he do that? He has no contemporary evidence other than he wanted to know what the state was going to offer. Well, Your Honor, other courts that have looked at this exact issue have held that that's sufficient. So the D.C. Circuit in Knight said that when a defendant asks his attorney to go and see what the prosecution will offer, that's sufficient to establish a reasonable probability that he would have accepted a plea. How does that make any sense? This is what the courts have said in Fulton and in Knight and the 2nd and the D.C. Circuits respectively. I think it does make sense. I think Mr. Ford was facing serious charges. He had no guarantee of acquittal at trial. It's very likely that he would have accepted a plea had one been offered, and it's likely that plea would have been more favorable than the sentence he received at trial. And what's more, the law of the circuit in U.S. Exerell Hampton v. Leibach has said that to meet this reasonable probability standard, a defendant does not need to show with certainty that the outcome would have been different, with certainty, Judge Hamilton, that he would have accepted a plea. He needs only show that his chances of acquittal were better than negligible, and here they were. No, that better than negligible language is not a legal standard. The legal standard is reasonable probability. Yes, I think that language is helpful in understanding the issue. It's not a legal standard. It should not be referred to as a legal standard. The legal standard from Strickland is reasonable probability. Judge Sykes, I think Mr. Ford meets that reasonable probability standard here by asking his attorney to go and see what the prosecution had to offer. The only reason he had no plea to accept is because Mr. Hicks did not even take the call to negotiate a plea. I mean, it's very unlikely that he would have been in the 3% of criminal cases in Indiana that did not end in pleas. The overwhelming likelihood is that had his attorney taken the meeting, he would have at least received an offer. So far you've been discussing this case on the merits as if we're under de novo review, which is the second-tier analysis because ed pedeference is the starting point, and you have to demonstrate that the Court of Appeals of Indiana unreasonably applied clearly established federal law as determined by the Supreme Court or made an unreasonable determination of the facts, and I haven't heard any argument on that yet. So that's your first line of argument. Yes, so the Indiana Court of Appeals misapplied clearly established federal law by incorrectly applying the missing evidence rule. That's not a rule of federal law that applies to the states through the supremacy clause, so that argument is a nonstarter. A complete nonstarter. Even if the state court applied its own missing witness rule that appears to be in place for post-conviction motions or petitions. So it's a rule of state evidence law. There was no federal evidentiary rule applied. There is none that applies in state court proceedings. Well, even if this court does not accept the D-1 argument, the Indiana Court of Appeals decision was still based on an unreasonable determination of the facts. Well, that assumes that there were factual determinations made here, and what the decision rests on is not determinations of fact, fact-finding in the ordinary sense, but factual deficiencies. The appellate court found the record deficient to support Mr. Ford's arguments, both on the plea bargaining issue and the other issues in the case, because all he had was his own affidavit. He had nothing else. This court has said, Your Honor, in Dalton, that a defendant's affidavit can be sufficient to support the kinds of factual findings that this court should have been making, but the state court refused to consider... We're talking about sufficiency under state law. We don't apply federal sufficiency standards when we're reviewing under ed pedeference state court judgments. Well, the Indiana Court of Appeals did misapply clearly established federal law. That is our position. I know that that's your position. I'm suggesting that that's a weak one, and your argument about an unreasonable determination of fact of the facts struggles because there really were no determination of facts here. There was a judgment by the appellate court, which is the last court to review this on the merits, that there were factual deficiencies, so the claim failed for that reason because the only thing in the record was Mr. Ford's affidavit. There was no evidence affidavit or otherwise from the defense lawyer. I think the Indiana Court of Appeals did make factual determinations, so they did determine that there was not ineffective assistance at plea bargaining without holding an evidentiary hearing. That's a legal question. I thought your position was that Mr. Ford did all he could to try to get an evidentiary hearing in the state courts and didn't get it. He was denied an evidentiary hearing. The Indiana Court of Appeals then refused to consider the fact that he had attempted to procure his attorney's testimony through informal correspondence, via certified mail, through deposition, through compelling testimony, and by seeking an evidentiary hearing, and he was thwarted at all turns, first by his attorney and then by the Indiana state courts, who denied his motions. So the Indiana Court of Appeals here made a factual determination without allowing Mr. Ford to sufficiently supplement the record. There was no factual determination here. There was a determination that the evidence was insufficient to support his claim. He apparently tried after 10 years of being represented by counsel and counsel's withdrawing, and we don't know what happened in those 10 years. We don't know why his attorney didn't develop the Strickland claim. The record is silent on all of that. There's no direct challenge to Judge Brennan's question to the procedure that was used here, the state procedure, which permits the court to require submission of the case on the affidavits, such as they were. There was only one. Nor would there be a valid challenge to that, it seems to me, on habeas review. That's a state procedure. So I'm not quite sure where the D2 argument goes here. Well, we think that the Indiana Court of Appeals determination that there was insufficient evidence here was not taking into account the fact that Mr. Ford has attempted to supplement the record by obtaining his attorney's testimony through an evidentiary hearing. He would surely also have been able to obtain testimony from the prosecutor. Right, but we don't correct procedural errors under state law by state courts on federal habeas review. We maintain that the Indiana Court of Appeals fails 2254 D2, and therefore this court does have jurisdiction over to correct that court's mistakes. What's the federal rule that was violated, or what is the hook there? This was a procedural misstep, I think your argument is, by the state appellate court based on this affidavit procedure, apparently, but that's a matter of state procedural law. The Indiana Court of Appeals violated 2254 D2, the statute, and there is federal, there's guidance from the Supreme Court in Brumfeld, in Miller, L., that the state court must take account of the evidence before it. I mean, this circuit has said in Lee v. Kink, a state court cannot insulate its decision from review by refusing to entertain vital evidence. And here, in refusing to allow Mr. Ford to supplement the record with his attorney's testimony while simultaneously holding that Mr. Ford had provided insufficient information, insufficient evidence to substantiate a finding of ineffective assistance of counsel, this court fails those standards from Brumfeld, from Miller, L., and its decision was ultimately based on an unreasonable determination of the facts under 2254 D2. Okay. Thank you very much. Thank you. We'll hear now from Mr. Colby. May it please the Court. Petitioner did not allege or establish sufficient facts in the state court to entitle him to relief. The conclusion that Petitioner failed to establish his claim was a reasonable application of Strickland. Petitioner's unreasonable determination of facts claim also goes nowhere. Why, Mr. Colby, isn't this similar to the Lee v. Kink case, where affidavit comes in, we're unable to determine the universe of the charges, and then that case gets remanded for an evidentiary hearing to find out whether or not there were plea negotiations, to find out what those plea negotiations might have looked like? A couple of answers to that. First of all, even taking what the petitioner alleged here in his affidavit as true before the state court, that's not sufficient. So even if he had an evidentiary hearing to establish everything he said in his affidavit, that he just was interested in seeing what the state had to say? He wants much more of a hearing than that, that he was not able to develop because the state courts would not let him. I share the interest in Lee v. Kink, which plaintiff's petitioner relies upon, and you did not mention in your brief. Well, I think that the first answer to that is the suggestion that the state court prevented the defendant from presenting or the petitioner here from presenting evidence is not true. He could present anything he wanted in his affidavit, and he could present to me. No, he needed to get evidence from his attorney and from a prosecuting attorney probably as well. And he wasn't prevented from doing either of those things. How not? He could have done either of those things. He could have asked for discovery from the state. He tried. What did he do wrong? The first thing he did, he said he wanted to depose counsel, and the post-conviction court said, well, tell me what you want to ask counsel, and I'll decide whether we need to depose counsel. And he didn't respond to that, so the trial court never set the matter for deposition. Then he said, I want you to order my counsel to provide affidavits, and the trial court said, well, what are the affidavits you want them to, have you provided them with the affidavits? There's no evidence that you, there's evidence that you've corresponded with them, but there's no evidence that you've asked them to sign affidavits. Provide that evidence, and then we'll go forward. Even the trial court then said, I'll look at your affidavit, and if your affidavit shows that we need to have a hearing, then I'll hold a hearing, or I'll. So just so that I understand, your position is that the trial court and the state court was receptive to holding a hearing, but the petitioner failed to respond to its questions? Correct. Okay. And what happened in the 10 years prior when Mr. Ford was represented by counsel on this post-conviction petition, as I understand the record, and didn't go anywhere with it. Do we know what happened? We don't know what happened. The state public defender's office was first assigned to represent the petitioner here, and then after three years on the case, they withdrew. It's unclear. The normal practice is they withdraw after they evaluate the case, and they submit a memo to the defendant or the petitioner saying, we don't see anything here we can raise. If you want to go ahead and raise things yourself, you can, but we're not going to represent you any further. Do we know one way or the other whether that occurred in this case? We don't, because that wasn't developed. All we know is that the state public defender withdrew. We don't know what information they provided to the petitioner. Then he hired a private counsel who represented him for a number of years, I think 2000, I forget when he entered his appearance, but he got off the case about 2018, and then the petitioner represented himself. There's no indication there why. So he had ample opportunity over the course of more than a decade to develop an evidentiary record for a Strickland claim. Yes. So it wasn't any fault of the court or any obstruction by the court or any acts by the court preventing him from doing that. In fact, the case remained open for a very long time. Correct. Through two lawyers? Correct. And we have no evidence in the record of what the petitioner knew, what evidence did he have at defense counsel's file in all his notes. There's just nothing. So this is not at all like Lee v. King? No. This is not a case in which petitioner was. He could have alleged in his affidavit. I mean, even if there was some barrier to him getting information from trial counsel, he could have alleged in his affidavit that he heard that there was an offer, what the offer was, or indicated anything about his willingness to plead guilty. But all the contemporaneous evidence, and even his affidavit, indicates he would not plead guilty. He asked for a speedy trial, which within 70 days of his initial hearing, he went to trial, and then at sentencing, the first thing out of his mouth to the trial court was, let me make clear, I am innocent of these charges. Nowhere in the record, anywhere, has it ever been suggested by him that he would plead guilty. And that was the basis of the post-conviction court. And then the court of appeals saying he hasn't presented any evidence to say that that conclusion was wrong. Because the only thing he presents is his curiosity as to what the state may have been willing to present as a plea offer. And I would point out that Judge Hamilton, going back and trying to recreate this, is very difficult because of what happened at trial. He was acquitted of one of the rape charges and one of the misdemeanors at trial, and then he received the advisory sentence. The suggestion, it would just be pure speculation that any offer from the state would be any better than what he received actually at trial of dismissing account and advisory sentence. No, we don't know. We don't know, right? Right. Allen County is a big county, big prosecutor's office, I assume. Individual prosecutors then and now are not free to do what they want to do on making deals. There might have been policies in place. Well, especially on eight felonies that the defendant was minimum non-suspendable on. So he was facing at least 20 years on the class A felonies. So the suggestion that the state would offer something well below the non-suspendable portion of the sentences is pure speculation and unlikely to occur. I mean, the prosecutor's just not going to offer. Does this case date back to the days of one for one good time? It does. So he will serve 35 years. And I would just point out the data that the brief, appellant's brief cites to is actually the amount of time in which a person is first released from custody, not his sentence. So what it says is first released on parole or probation. So an average of seven years in Indiana in 2005, that would have meant a 14-year sentence, assuming good time credit that then a person's released on probation or parole. So, again, there's just no evidence that there would be a huge sentencing disparity between any speculative offer and what he received at trial. So from Mr. Ford's perspective, would he have had available to him this Davis-Hatton procedure under Indiana law where he could have suspended his direct appeal and created some kind of record with regard to the law with his lawyer? He could have, but he basically did that because he sought post-conviction directly after his direct appeal. His direct appeal was over in 2006, and in 2007 he filed his petition for post-conviction relief. So there wasn't a lot of law. That would have saved him maybe a little bit of time. Well, maybe not. Maybe it wouldn't have. Maybe if he would have done that, his direct appeal wouldn't have been decided for several years while it meandered through post-conviction. Mr. Coby, the petitioner, as I understand it, is telling us that the state did offer to discuss a plea and that he told his attorney to do so. Do you agree we have to treat those two points as true for purposes of this appeal? I don't believe so because I don't believe that the state court found that to be true. What the state court said was, we don't believe that you wanted to negotiate because everything about this trial was you asserting your innocence. So the trial court said there was no suggestion that you ever wanted to plead guilty. So I don't believe that you were, whether it's sincere in asking for an offer or I don't believe you ever asked for an offer. That's what the post-conviction court said. The court of appeals rested its ruling on different grounds, did it not, on the plea bargaining claim? I don't believe so. I believe what the, so the standard review in post-conviction for the appellate court is that the post-conviction court was wrong. And so what the court of appeals said was, you don't have any evidence to show what the post-conviction court said was wrong. All you have is your affidavit and the post-conviction court didn't have to believe that, and there's no other evidence that shows that the post-conviction court was wrong. So we affirm. Failure of proof. Correct, correct. I'll just point out, this would be an extension of Lafleur and Frey. Even this court hasn't accepted that extension in 2255 cases. So this court has recognized that without an offer, you can't make out a claim under Lafleur or Frey. So this would be an extension. And it's what the court of appeals did was not unreasonable application of Strickland or Frey or Lafleur application of Strickland. Do you think an attorney provides sufficient performance if the client asks to solicit an offer from the prosecutor and the attorney refuses? I think that's too broad of a statement because I think there could be information in the attorney's knowledge that would indicate that that would be pointless or what the defendant asked for. You know, go ask the state if they will give me a plea to no jail time. And the attorney says there's no reason to take that. We don't have that here. What we just have is what are they offering, right? How is that sufficient performance by an attorney? I understand there are very difficult problems about proving prejudice. I think without more, that wouldn't be sufficient to establish a violation and definitely wouldn't be something that the state court would have to find deficient performance in that situation under the U.S. Supreme Court case law jurisprudence. Could it be sufficient for a court? If I understand your answer, you're speculating that there might be excuses, in essence, for failing to follow that instruction. Well, I think what I'm saying, maybe excuses or just there may be reasonable reasons that counsel wouldn't follow that instruction. But unless we know. But, of course, yes. But, of course, it's the petitioner's burden to establish that he has been denied the ineffective assistance of counsel. To establish that there was no possible explanation for it? How is he going to do that without getting the attorney under oath? No, I think he has to do more than just say, I was interested in negotiations. He has to allege more than that because he has to allege that he would have accepted an offer that was made and that he would have pled guilty and the court would have accepted it. And so just saying, I think, I'd like to find out what the state's thinking, is not enough to establish a strictly claim. Actually, wouldn't he have to do more than just allege those things? Well, he'd have to provide proof. He'd have to put in admissible evidence in the form of a sworn statement that all those things were true. Correct, Your Honor. Thank you. It's to ask that you affirm. Ms. Riley. Thank you, Your Honor. Just a couple of points in response to the government's argument. The first is that ignoring evidence is a D2 error. That has been found in Nunes by the Ninth Circuit, in Dalton by this circuit, and it has been affirmed with the reasoning of Miller L.V. Cockrell in the Supreme Court. The problem is that there was no evidence ignored here. It just wasn't in the record. This was an evidence deficiency problem, a failure of proof, rather than a court that was ignoring record evidence. There was a determination or an inference that the evidence that was not presented by fault of Mr. Hicks would not have helped Mr. Ford. And that is the factual determination that was made. Could you address as specifically as possible the state's point that the PCR court responded to Mr. Ford's request for a hearing, deposition, development of the evidence, and that he then failed to respond? That Mr. Ford failed to respond? Yes. So what the record shows us is that Mr. Ford made repeated attempts to communicate with Mr. Hicks and to go through post-conviction court proceedings in order to supplement the record and that he was thwarted at every turn. So his motions were denied. My question, the state told us that the court directed requests for additional information to Mr. Ford. Is that correct? Yes, they sought more information from Mr. Ford. Did he respond? He did not. He was not able to provide that evidence. Why is that not a problem here? It is a problem but likely in a different way from how you're suggesting because all of that evidence was in the power of Mr. Hicks to provide a justification for his actions and his deficiencies. So Mr. Ford, especially as a pro se litigant, did everything he could, he took every step available to him, he sought that information, and he was thwarted. Do we have his responses in the record? We do not. And so if I may turn to an earlier question of yours, Judge Hamilton, and specifically addressing the relief that is sought here, granting habeas relief would require either releasing the prisoner or retrying the prisoner and no plea deal need be revitalized or resurrected, recreated. Instead there would be new plea negotiations, there would be new appointment of counsel, and the trial would go on as needed. But even if this court still maintains doubts about a factual disparity or factual discrepancy, it should order an evidentiary hearing, and that evidentiary hearing could affirm that there was deficiency here, very much in line with the deficiency that was found in Frye in the Supreme Court. It may reveal more information about prejudice by compelling Mr. Hicks to comply, and that would be in line with other circuits' treatments of this issue with plea bargaining. And so for the foregoing reasons, we ask that this court grant full habeas relief to Mr. Ford or in the alternative order an evidentiary hearing. Thank you. Thank you very much. Ms. Riley and Ms. Cleary, you have the gratitude of the court, and your professor and your colleagues at Northwestern Law School have the gratitude of the court, and I see some of them probably in the gallery here today that probably worked on this case, so you also have the thanks of this court for your excellent advocacy in this case, your willingness to accept this difficult case and this appointment on behalf of your client. Well done. Thanks to all counsel. The case is taken under advisement.